IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Claude W. Pound and Patricia E. Pound, | ) ) ) | C/A No. 3:21-cv-02335-DCC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Government Employees Insurance Company d/b/a GEICO, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

This matter is before the Court on Plaintiffs Claude and Patricia Pound's and Defendant Government Employees Insurance Company's ("GEICO") Cross-Motions for Summary Judgment. ECF Nos. 16, 17. The parties filed Responses, and Plaintiffs filed a Reply. ECF Nos. 17, 18. The parties also filed Sur-Replies and Supplemental Memoranda in support of their Motions. ECF Nos. 21, 24, 29, 35. The Court held a hearing on November 15, 2022, and took the Motions under advisement. ECF No. 37. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is denied and GEICO's Motion for Summary Judgment is granted.

## <u>BACKGROUND</u>

On the morning of August 17, 2018, Plaintiff Patricia Pound drove her husband, Claude, her six-year-old son Raylan, and her son's seven-year-old friend Jason Gulledge to the Ford Dealership in Lexington, South Carolina to check whether service on Claude's

Ford Ranger pickup truck could be performed.  ECF Nos. 1-1 at 4; 13 at 2.[1]  Patricia was driving a 2015 Kia Van, which, in addition to Claude's truck and three other vehicles, was insured by GEICO through an automobile liability policy ("the Policy").  ECF No. 13 at 2. The Policy states in relevant part:

> Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:
>
> 1. *bodily injury*, sustained by a person; and
>
> 2. damage to or destruction of property;
>
> arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*.
>
> We will defend any suit for damages payable under the terms of this policy.  We may investigate and settle any claim or suit. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

ECF No. 13-1 at 18 (emphasis in original).  The Policy provides bodily injury limits of $300,000 for each person and each occurrence.  *Id.* at 4.  There is no dispute that Plaintiffs are insureds under the Policy.  *See* ECF No. 17-1 at 2.

Prior to the trip to the dealership, Claude placed his Luger LCP .380 handgun, a semi-automatic weapon, which was loaded and did not have a safety, underneath the front seat of Patricia's van in a zippered canvas camera bag.  ECF No. 13 at 3.  Claude had a Concealed Weapon Permit for the handgun and routinely transported the gun with him in his personal vehicle.  *Id.*  During the trip, Claude was seated in the front passenger

---

[1] The facts of this case are drawn from the parties' stipulation of facts.  ECF No. 13.

seat of the van, Raylan was seated in a car seat in the second row, and Jason was also seated in the second row next to Raylan. *Id.* at 2.

Upon arrival at the dealership, Patricia exited the van to find a mechanic, and Claude remained in the vehicle to supervise the children. *Id.* at 3. During this time, the van was parked, the engine remained running, and the air conditioning was on. *Id.* Subsequently, Patricia and a serviceman approached Claude's side of the van to discuss the status of his truck's service. *Id.* During their conversation, Raylan began screaming in the backseat because a fly had landed on his food. *Id.* at 3–4. Patricia suggested that Claude exit the van to speak with the serviceman outside. *Id.* at 4. Then, she opened the back passenger side door to help Raylan, who was still in his car seat, get the fly off his food and to calm him down. *Id.* at 4. Patricia took the food that had the fly on it from Raylan's hand and began to walk around the van to get into the driver's seat. *Id.*

While Patricia was walking around the van, Raylan got out of his car seat, found the hidden camera bag containing the handgun, pulled the gun out of the bag, pointed it at Jason, pulled the trigger, and shot Jason. *Id.* The bullet struck Jason in the torso, causing significant external and internal wounds, injuries, and damages. *Id.* The bullet scarred Jason's abdomen, damaged his gall bladder (which had to be surgically removed), fractured a rib, damaged his liver, passed through his diaphragm, and exited on the other side of his torso. *Id.* Jason also sustained nerve injury to his right hand as a result of the incident. *Id.*

Thereafter, on August 2, 2019, Jason's parents sent a demand letter to GEICO claiming the bodily injury limits of $300,000 in Plaintiffs' Policy as damages for Jason's

injuries.  *Id.*  On August 5, 2019, Plaintiffs sent a letter to GEICO stating they believed they were liable for Jason's injuries, that a potential jury verdict would exceed the Policy's limits of $300,000, and demanded that GEICO settle the claim.  *Id.* at 5.  On August 19, 2019, GEICO denied coverage for Jason's injuries under the Policy.  *Id.*

On July 9, 2021, Plaintiffs filed a declaratory judgment action in the Lexington County Court of Common Pleas, requesting a declaration that GEICO has a duty to defend, indemnify, and provide coverage for Jason's claims.  ECF No. 1-1 at 10.  On July 28, 2021, GEICO removed the action to this Court.  ECF No. 1.  Thereafter, Plaintiffs and GEICO filed Cross-Motions for Summary Judgment.  ECF Nos. 16, 17.  The Motions have been fully briefed.  The Court held a hearing on November 15, 2022, and took the Motions under advisement.  ECF No. 37.  The Motions are now before the Court.

## APPLICABLE LAW

### *Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> > (B) showing that the materials cited do not establish the absence or presence of a genuine

> dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The parties submit that the issue before the Court is whether Jason's injuries arose out of the "use" of Plaintiffs' insured vehicle. The parties further agree that South Carolina law governs this issue. Under South Carolina law, no automobile insurance policy may be issued or delivered in this State, "unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of a motor vehicle. S.C. Code Ann. § 38-77-140(A) (2015). The Supreme Court of South Carolina has outlined a three-part test for determining "whether an injury arises out of the 'ownership, maintenance, or use' of a motor vehicle." *Peagler v. USAA Ins. Co.*, 628 S.E.2d 475, 478 (S.C. 2006) (quoting S.C. Code Ann. § 38-77-140(A)). "The party seeking coverage must show (1) a causal connection exists between the vehicle and the injury, (2) no act of independent significance breaks the causal link between the vehicle and the injury, and (3) the vehicle was being used for transportation purposes at the time of the injury." *Id.* (citing *State Farm Fire & Cas. Co. v. Aytes*, 503 S.E.2d 744, 745 (S.C. 1998)). "No distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." *Home Ins. Co. v. Towe*, 441 S.E.2d 825, 827 (S.C. 1994).

The causal connection prong of the test (1) "is established where it can be shown the vehicle was an 'active accessory' to the assault"; (2) requires "something less than proximate cause and something more than the vehicle being the mere site of the injury"; and (3) requires that "the injury must be foreseeably identifiable with the normal use of the vehicle." *Aytes*, 503 S.E.2d at 745–46 (citing *Wausau Underwriters Ins. Co. v. Howser*, 422 S.E.2d 106 (S.C. 1992), and *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir. 1985)); *see also State Farm Mut. Auto. Ins. Co. v. Bookert*, 523 S.E.2d 181, 182 (S.C. 1999) (providing *Aytes*' three-part test and the components of the causal connection requirement). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred." *Aytes*, 503 S.E.2d at 746 (citing *Brown*, 779 F.2d at 989).

Determining whether a causal connection exists between Plaintiffs' use of the vehicle and the gunshot injuries requires a review of prior South Carolina case law that has addressed this issue. In 1992, the Supreme Court of South Carolina held in *Howser* that the insurer was liable for gunshot injuries sustained by a person travelling on a public highway in an insured vehicle and inflicted during a vehicular chase by an unknown owner or operator of an unidentified vehicle. 422 S.E.2d at 107. Specifically, the court determined that the unknown vehicle was an active accessory to the assault and that a causal connection existed between the assailant's vehicle and the victim's injuries because "[o]nly through use of his vehicle was the assailant able to closely pursue [Victim], thereby enabling him to carry out the pistol assault." *Id.* at 108. The court also held that no independent act occurred to break the causal link because "the unknown

driver's use of the vehicle and the shooting were inextricably linked as one continuing assault." *Id.* at 109.

Similarly, two years later, in *Towe*, an automobile passenger threw a bottle from a moving vehicle towards a road sign, which hit the steering wheel of a tractor causing the tractor driver to endure serious injuries. 441 S.E.2d at 826. The Supreme Court of South Carolina held that a causal connection existed between the automobile and the driver's injuries because "[t]he use of the automobile placed [the passenger] in the position to throw the bottle at the sign and the vehicle's speed contributed to the velocity of the bottle increasing the seriousness of [the tractor driver's] injuries." *Id.* at 827. The court also determined that there was no act of independent significance that broke the causal connection because the use of the automobile and the throwing of the bottle were inextricably linked as one continuing act. *Id.* Thus, the court affirmed the court of appeals' decision that insurance coverage existed for the incident. *See id.*

However, in 1998, the Supreme Court of South Carolina held in *Aytes* that there was no causal connection between the automobile and the victim's gunshot injuries, where the assailant forced the victim into the car, drove her to a location with the intent of killing her, and while standing outside of the car on the passenger side, fired a pistol towards the victim, striking her in the foot. 503 S.E.2d at 745–46. Specifically, the court determined the vehicle was not an active accessory and was not being used for transportation at the time of the injury. *Id.* at 746. The court further found that, even if there was a causal connection, the connection was broken when the assailant exited the vehicle. *Id.*

Likewise, in 1999, the Supreme Court of South Carolina in *Bookert* declined to find coverage, where the assailant automobile passenger fired a handgun and struck the victim, who was standing outside the car, because the victim's injuries were not "foreseeably identifiable with the normal use of an automobile." 523 S.E.2d at 181–82 (quoting *Aytes*, 503 S.E.2d at 746). In 2006, the Supreme Court of South Carolina similarly determined in *Peagler* that no coverage existed, where a shotgun accidentally discharged during the unloading of firearms from a stationary, occupied vehicle, killing the driver of the automobile. 628 S.E.2d at 156, 165. Specifically, the court found that, although "[t]he injury was foreseeably identifiable with the normal use of the pickup truck," as many vehicles, including pickup trucks, in South Carolina are used for hunting purposes, the vehicle was not an active accessory to the injury because it was not actively used or involved in causing the injury. *Id.* at 164. Instead, the court stated that "it was merely the site of the injury." *Id.* Thus, the court held there was no causal connection between the vehicle and the accidental shooting. *Id.* Based on this holding, the court declined to address the remaining *Aytes* factors of whether an independent act of significance broke the causal link between the vehicle and the injury and whether the vehicle was being used for transportation purposes at the time of the injury. *Id.*

Recently, the Supreme Court of South Carolina reversed the court of appeals' decision in *Progressive Direct Insurance Company v. Groves*, holding that "gunshot injuries do not arise out of the use of an automobile." 2022 WL 4361910, at *1 (S.C. Sup. Ct. Sept. 21, 2022).[2] In *Groves*, the assailant shot and killed the victim with a rifle while

---

[2] The Supreme Court of South Carolina denied the petition for rehearing in *Groves* on January 12, 2023, and the remittitur was sent on that date. Accordingly, the *Groves* decision is now final, binding precedent in this State. *See Beatty v. Rawski*, 97 F.Supp.3d

both were in their vehicles at a stoplight. *Id.* Significantly, the court held that its previous decisions in *Howser* and *Towe* were "an aberration in our jurisprudence," as the decisions that followed have all declined to find coverage where injuries arose from a gunshot wound. *Id.* at *3. The court also found that *Howser* and *Towe* did not incorporate the foreseeability component subsequently adopted in *Aytes* and *Bookert* and ultimately concluded that "*Aytes* changed the legal landscape," noting that *Howser* and *Towe* "were sharply limited by *Aytes* and the new framework it established." *Id.* at *4. Moreover, the court determined that "it is not reasonable to conclude that the parties to an insurance contract intended gunshot injuries to be covered by an automobile insurance policy." *Id.* Alternatively, the court found that even if there was a causal connection between the assailant's vehicle and the victim's fatal injuries, the act of firing a weapon into another vehicle constituted an act of independent significance to break the causal chain. *Id.* Accordingly, the court reinstated the circuit court's grant of summary judgment in favor of the insurance company. *Id.* at *5.

Here, Plaintiffs argue they are entitled to summary judgment because there is no genuine issue of material fact as to whether Jason's injuries arose out of the use of Plaintiffs' automobile, relying on the Supreme Court of South Carolina's decisions in *Howser* and *Towe* and the South Carolina Court of Appeals' decision in *Groves*. *See* ECF No. 16-1 at 4–5, 8–13. Plaintiffs emphasize that the Policy does not define the term "use," places no limitation on the term, and is silent as to any exclusion regarding gunshot

---

768, 780 (D.S.C. 2015) (citing *Harleysville Mut. Ins. Co. v. State*, 736 S.E.2d 651, 655 n.2 (S.C. 2012) ("In South Carolina, the final disposition of an appeal does not occur until after the remittitur is filed in the circuit court." (internal quotation marks omitted))).

injuries. *Id.* at 5. Specifically, Plaintiffs claim that they used the vehicle to store and conceal Claude's handgun, to transport the gun with him, to transport Plaintiffs and the children to and from the car dealership, and to supervise the children while at the dealership. *Id.* at 14. Plaintiffs contend that it was only through Claude's use of the automobile to store and transport the gun that Raylan was able to obtain the gun and injure Jason. *Id.* at 15. They further assert that the insured vehicle served as an active accessory to the shooting because the automobile was being used both to store and conceal the handgun and as an area to supervise the children. *Id.* at 15–16. Plaintiffs also claim that use of a handgun is foreseeably identifiable with the normal use of an automobile. *Id.* at 19. Moreover, Plaintiffs allege that there was no independent act of significance that broke the causal connection between their use of the vehicle and Jason's injuries because the shooting of the handgun and Plaintiffs' use of the vehicle were "inextricably linked" as one continuing act. *Id.* at 17–18. They also assert that the van was being used for transportation to and from home at the time of the incident. ECF No. 18 at 11.

In contrast, GEICO argues there is no causal connection between Plaintiffs' use of the vehicle and Jason's gunshot injuries because the vehicle was not an active accessory to the injury but instead was merely the location where the incident occurred. ECF No. 17-1 at 4–5. Specifically, GEICO emphasizes that the van was not operational at the time of the incident because it was stopped and in park. *Id.* at 5, 11. GEICO also claims that while it is foreseeable that an automobile driver or owner may carry guns inside of their vehicle, the gunshot injury here is not foreseeably identifiable with the normal use of a

vehicle.  *Id.* at 12.  Even if Plaintiffs have established a causal connection, GEICO contends that it was broken by acts of independent significance because the shooting was unrelated to any use of the vehicle, occurred when the van was parked and not otherwise moving, and resulted after the only adults who could operate the vehicle had both exited.  *Id.* at 13–15.  GEICO also asserts that the van was not being used for transportation at the time of incident.  *Id.* at 15–16.  Thus, GEICO claims Plaintiffs have not satisfied the requirements of the *Aytes* test to establish that Jason's injuries arose from their use of the vehicle.  In addition, GEICO argues that the Supreme Court of South Carolina's recent decision in *Groves* conclusively forecloses Plaintiff's claim for coverage in this case because of its clear and unequivocal holding that "gunshot injuries do not arise out of the use of an automobile."  ECF No. 29 at 1 (quoting *Groves*, 2022 WL 4361910, at *1).

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds the gunshot injuries do not arise from Plaintiffs' use of the vehicle because there is no causal connection between the vehicle and the injury.[3]  While storing and transporting a firearm may be a normal and anticipated use of an automobile, Plaintiffs have not demonstrated that the vehicle was an active accessory to the injury.

---

[3] Even if Plaintiffs could establish a causal connection and there was no act of independent significance that broke any potential causal link between the vehicle and the injury, Plaintiffs' claim fails on the third *Aytes* factor because the vehicle was not being used for transportation at the time of the incident, as it was stopped and parked at the dealership.  Accordingly, the Court finds that the injuries do not arise from Plaintiffs' use of the vehicle, as all three components of the *Aytes* test have not been satisfied.  *See Integon Gen. Ins. Co. v. Bartkowiak ex rel. Bartkowiak*, C.A. No. 7:09-cv-03045-JMC, 2010 WL 4156471, at *7 (D.S.C. Oct. 19, 2010) ("Under the *Aytes* test, all three elements must be established.").

Unlike *Howser* and *Towe*, the van was not actively used or involved in causing the injury; instead, it was merely the site of the injury.  *See Peagler*, 628 S.E.2d at 481 (finding the truck was not actively used or involved in causing the injury and was merely the site of the injury); *Aytes*, 503 S.E.2d at 746 ("The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred.").  Thus, Plaintiffs have failed to show, under the facts as stipulated, that a causal connection exists between their use of the vehicle and the injury.[4]  The Court further finds that the Supreme Court of South Carolina's decisions in *Peagler* and *Groves* preclude a finding of coverage in this case.  *See Peagler*, 628 S.E.2d at 163 (declining to follow precedent in which other courts have found that insurance coverage exists for accidental gunshot injuries); *Groves*, 2022 WL 4361910, at *4 ("We agree with other courts that have held it is not reasonable to conclude that the parties to an insurance contract intended gunshot injuries to be covered by an automobile insurance policy.").

---

[4] *See, e.g.*, *Nationwide Affinity Ins. Co. of Am. v. Logan*, 580 F.Supp.3d 199, 206 (D.S.C. 2022) (applying *Aytes* and finding no causal connection between the vehicle and the injury); *Holmes v. Allstate Ins. Co.*, 786 F.Supp.2d 1022, 1027 (D.S.C. 2009) (same); *Nationwide Prop. & Cas. Co. v. Lain*, 402 F.Supp.2d 644, 648 (D.S.C. 2005) (same); *State Farm Mut. Auto. Ins. Co. v. Myers*, C.A. No. 4:20-cv-00241-SAL, 2021 WL 3701835, at *3 (D.S.C. Aug. 20, 2021) (same); *Gov't Emps. Ins. Co. v. Bland*, C.A. No. 2:19-cv-00820-RMG, 2019 WL 6463792, at *3–4 (D.S.C. Dec. 2, 2019) (same); *Am. Serv. Ins. Co. v. OnTime Transp., LLC*, C.A. No. 5:17-cv-01120-JMC, 2019 WL 3972820, at *7–8 (D.S.C. Aug. 22, 2019) (same); *Nationwide Mut. Fire Ins. Co. v. Jeter*, C.A. No. 3:12-cv-01759-MBS, 2013 WL 3109214, at *5 (D.S.C. June 18, 2013) (same).

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [16] is **DENIED** and Defendant's Motion for Summary Judgment [17] is **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 31, 2023
Spartanburg, South Carolina